UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**JACOB BRANNON**                                                               **PLAINTIFF**

**v.**                               **CIVIL ACTION NO. 5:21-CV-P141-TBR**

**BENJI GUILL** *et al.*                                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. The matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some of Plaintiff's claims and allow others to proceed.

**I.**

Plaintiff is incarcerated as a pretrial detainee at the Christian County Jail (CCJ). He names the following as Defendants – Livingston County Jailer Benji Guill; CCJ Jailer Brad Hewell; CCJ Colonel Steve Howard; CCJ Deputy James Haggeman; and CCJ Deputy Matthew Moe. Plaintiff sues all Defendants in both their official and individual capacities.

Plaintiff first alleges that Defendants Guill and Hewell violated his constitutional rights by forcing him "to live in a cell [] that was not built to support the # of people housed who were housed therein and because for the lack of area and/or utilities, my well-being . . . was put in danger."

Plaintiff next alleges that Defendants Guill, Hewell, and Howard violated his constitutional rights by placing him in segregation in retaliation for Plaintiff filing a grievance regarding the overcrowded cell conditions. Plaintiff additionally states that since being placed in segregation he has not been able to practice his religion.

Plaintiff also alleges that Defendants Guill, Hewell, Haggeman, and Moe violated his constitutional rights when they failed to respond to a medical emergency for over ninety minutes.

Finally, Plaintiff states that Defendants Guill and Hewell violated his rights by forcing him to live in segregation without his consent or request, or due to a medical or mental issue, disciplinary action, or a "conflict."

As relief, Plaintiff seeks damages and transfer to different jail.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard

of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

### III.

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claim against Defendant Guill is actually against Livingston County and his official-capacity claims against the CCJ Defendants are actually against Christian County.

When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691. To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show

that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, Plaintiff does not allege that any harm he suffered was the result of a custom or policy implemented or endorsed by Livingston or Christian County. Thus, because the complaint fails to establish a basis of liability against any municipality, Plaintiff's official-capacity claims must be dismissed for failure to state a claim upon which relief may be granted.

### B.  Individual Capacity Claims

#### 1.  First Amendment Retaliation Claims

Upon consideration, the Court will allow First Amendment retaliation claims to proceed against Defendants Guill, Hewell, and Howard in their individual capacities for allegedly placing Plaintiff in segregation in retaliation for filing a grievance.

#### 2.  First Amendment Free Exercise Claim/RLUIPA Claims

Upon consideration, the Court will also allow First Amendment free exercise claims to proceed against Defendants Guill, Hewell, and Howard in their individual capacities for not allowing Plaintiff to practice his religion while in segregation. The Court will also allow a Religious Land Use and Institutionalized Person Act (RLUIPA) claim to proceed based upon this allegation.

#### 3.  Fourth Amendment Claims

Plaintiff repeatedly asserts that Defendants' actions violated his rights under the Fourth Amendment. In *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), the Sixth Circuit held that

4

the Fourth Amendment applies to a pretrial detainee after the arrest until the detainee has been arraigned and a judge has found probable cause. Because Plaintiff does not suggest that he had not yet been arraigned when the allegations set forth in the complaint occurred, the Court will dismiss his Fourth Amendment claims for failure to state a claim upon which relief may be granted.

### 4. Eighth/Fourteenth Amendment Claims

The Court next turns to Plaintiff's allegations regarding the overcrowding of his cell and certain Defendants' failure to timely respond to "his medical emergency" which he claims violated his rights under the Eighth and Fourteenth Amendments.

Although the Sixth Circuit has "'historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims under the same rubric,'" it is the Fourteenth Amendment that applies to pretrial detainees. *Brawner v. Scott Cty.*, 14 F.4th 585, 591 (6th Cir. 2021) (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). The rubric includes both an objective prong and a subjective prong. *Id*. To satisfy the objective prong under either the Eighth or Fourteenth Amendment, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The *Brawner* court, however, changed the subjective prong of the standard for Fourteenth Amendment claims brought by pretrial detainees and held that a "modified" deliberate-indifference standard of recklessness now applies. *Id*.[1]

---

[1] The *Brawner* court explained the recklessness standard as follows:

> Mere negligence is insufficient. A defendant must have not only acted deliberately (not accidentally), but also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. *Farmer*, 511 U.S. at 836 []. A pretrial detainee must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *see Darnell v. Pineiro*, 849 F.3d 17, 35 (2nd Cir. 2017) ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."); *Griffith v. Franklin Cty.*, 975 F.3d 554, 589 (6th Cir.

5

Upon consideration, the Court finds that Plaintiff's allegations regarding cell overcrowding and "a medical emergency" are too conclusory and lack sufficient detail to state constitutional violations. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555, 557)).

The Court, therefore, will dismiss these claims for failure to state a claim upon which relief may be granted.

### 5. Fourteenth Amendment Due Process Claim

Finally, the Court turns to Plaintiff's claim that there was no justifiable reason for him to be placed in segregation. To determine whether segregation of an inmate from the general prison or jail population involves the deprivation of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, the Court must determine if the segregation imposes an "'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, courts have found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812-13 (holding that two years of segregation while inmate was investigated for murder of prison guard in riot did not implicate a liberty interest entitling him to

---

2020) (Clay, J., concurring in part and dissenting in part) (explaining that a pretrial detainee must prove that the defendant acted "intentionally to ignore [her] serious medical need or recklessly failed to act with reasonable care to mitigate the risk that the serious medical need posed to the pretrial detainee, even though a reasonable official in the defendant's position would have known, or should have known, that the serious medical need posed an excessive risk to the pretrial detainee's health or safety").

*Id.* at 596-97.

due process); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (concluding that more than a year in administrative segregation did not implicate inmate's due process rights); *Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 U.S. Dist. LEXIS 39326, at *4-7 (W.D. Mich. Mar. 3, 2021) (holding that pretrial detainee's ten-month placement in segregation failed to implicate a liberty interest entitling him to due process); *cf. Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's eight-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process").

Plaintiff indicates that he was placed in segregation on September 7, 2021, and he filed the instant action on September 16, 2021. In light of the above jurisprudence, the Court concludes that Plaintiff's nine-day placement in segregation, although ongoing at the time Plaintiff filed the complaint, does not constitute an atypical and significant hardship triggering his right to due process. As such, the Court will dismiss Plaintiff's Fourteenth Amendment due process claims for failure to state a claim upon which relief may be granted.

### C. Injunctive Relief

Plaintiff requests injunctive relief in the form of transfer to another jail. However, inmates have no constitutional right to placement in a particular prison facility. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995) (inmate has no constitutional right to be transferred from one institution to another); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam) (rejecting claim that being held in a county facility was more disagreeable than if plaintiff had immediately been transferred to a state facility). Therefore, Plaintiff's injunctive-relief claim seeking transfer to another jail must be dismissed for failure to state a claim upon which relief may be granted.

## IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official-capacity claims, his claims against Defendants Haggeman and Moe, his claims brought under the Fourth, Eighth, and Fourteenth Amendments, and his claim for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Because no claims remain against them, the **Clerk of Court** is **DIRECTED** to terminate Defendants Haggeman and Moe as parties to this action.

The Court will enter a Service and Scheduling Order to govern the claims it has allowed to proceed. In allowing certain claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

Date: February 10, 2022

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
   Defendants
   Christian County Attorney
   Livingston County Attorney
4413.011